Bear Wilner-Nugent, OSB #044549
Bear Wilner-Nugent, Counselor and Attorney at Law LLC
620 SW 5th Avenue, Suite 1008
Portland, Oregon 97204
Phone: (503) 351-2327
Fax: (503) 914-6665
Email: bwnlaw@gmail.com
Attorney for Defendants Ali Mahyari and Roza Malekzadeh

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 3:20-CV-01887-BR |
| Plaintiff, | **ANSWER AND AFFIRMATIVE DEFENSES OF ALI MAHYARI AND ROZA MALEKZADEH** |
| v. | |
| ALI MAHYARI and ROZA MALEKZADEH, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

Defendants Ali Mahyari and Roza Malekzadeh, through counsel, respectfully answer the

government's complaint and admit, deny, and allege as follows:

## ANSWER

1.      Defendants admit the allegations in paragraphs 1 and 2 of the complaint.

2.      Defendants deny the allegations in paragraphs 3 and 4 of the complaint.

3.      Defendants admit the allegations in paragraphs 5 through 18 of the complaint.

4.     Defendants admit the allegations in paragraph 19 of the complaint, except that they deny that Mr. Mahyari had signing authority over the EN Bank Account.

5.     Defendants admit the allegations in paragraphs 20 through 22 of the complaint.

6.     Defendants deny the allegation in paragraph 23 of the complaint.

7.     Defendants admit the allegations in paragraphs 24 through 28 of the complaint.

8.     Defendants admit the allegations in paragraph 29 of the complaint, except that they deny that all of the gold and silver was sold.

9.     Defendants deny the allegation in paragraph 30 of the complaint.

10.    Defendants admit the allegation in paragraph 31 of the complaint.

11.    Defendants admit the allegations in paragraph 32 of the complaint, except that they deny that the -2234 account remained open past 2014.

12.    Defendants admit the allegations in paragraphs 33 and 34 of the complaint.

13.    Defendants deny the allegations in paragraph 35 of the complaint, except that they admit that Ms. Malekzadeh met personally with tax preparer David Niebur from time to time.

14.    Defendants admit the allegations in paragraphs 36 through 42 of the complaint.

15.    Defendants admit the allegations in paragraph 43 of the complaint, except that they deny the accuracy of the alleged 2011 EN Account High Balance.

16.    Defendants admit the allegations in paragraph 44 of the complaint.

17.    Defendants admit the allegations in paragraph 45 of the complaint, except that they deny that Mr. Mahyari had signature authority over the EN Bank Account.

18.    Defendants admit the allegations in paragraphs 46 through 49 of the complaint.

19.    Defendants deny the allegations in paragraph 50 of the complaint.

20.    Defendants admit the allegations in paragraphs 51 through 54 of the complaint.

21.     Defendants deny the allegations in paragraphs 55 and 56 of the complaint.

22.     Defendants admit the allegations in paragraphs 57 through 62 of the complaint, except that they clarify that Ms. Malekzadeh's first name is spelled Roza, not Reza.

23.     Defendants deny the allegations in paragraph 63 of the complaint.

24.     Defendants admit the allegations in paragraphs 64 through 67 of the complaint, except that they clarify that Ms. Malekzadeh's first name is spelled Roza, not Reza.

25.     Defendants deny the allegations in paragraphs 68 and 69 of the complaint.

26.     To the extent that the complaint can be construed as containing any factual allegations that defendants have not yet addressed in this answer, defendants deny those allegations.

## SUPPLEMENTAL ALLEGATIONS

### *No Willful Violation*

27.     Defendants did not willfully violate any provision of federal law as part of the process of moving their Iranian real property sale net proceeds to the United States.

28.     Defendants do not assume any burden of production or persuasion by negating the government's allegations of willfulness.

### *Precious Metal Investments*

29.     During the time period at issue in the complaint, defendants used gold and silver as means to stabilize the value of their investment portfolio. They did so because otherwise they ran a serious risk of having their investment funds stuck in currencies with values that fluctuated wildly, like the Iranian rial.

30.     Defendants were not required by law to report their purchases of gold and silver,

but only any capital gains or losses upon the sale of that gold and silver.

*Lawyer Mehmoush Yazdanyar*

31.     Defendants retained California lawyer Mehmoush Yazdanyar in order to assist them in meeting all requirements of federal law associated with the process of selling defendants' Iranian property and transferring the proceeds from the sale to the United States.

32.     Yazdanyar obtained the Office of Foreign Asset Control license described in the complaint for defendants.

33.     Defendants knew that, after they had hired Yazdanyar to help them comply with the pertinent federal laws, Yazdanyar successfully obtained the OFAC license so that defendants could transfer their real estate sale proceeds.

34.     Based both on the scope of defendants' contract with Yazdanyar and on what Yazdanyar had told defendants about her work on their behalf — personally and through her advertising and marketing materials — defendants reasonably, but mistakenly, believed that Yazdanyar had complied with the FBAR reporting requirement for the sale proceeds as well as the OFAC licensing requirement.

*Tax Preparer David Niebur*

35.     During the time period at issue in the complaint, defendants retained Niebur to prepare their income tax returns and associated filings. Niebur was an enrolled agent doing business as an individual.

36.     Niebur held himself out as an experienced tax practitioner with the training and expertise needed to assist defendants with their tax matters.

37.     Defendants reasonably relied on Niebur's representations about his knowledge and competency to prepare defendants' tax returns.

ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANTS ALI MAHYARI AND ROZA MALEKZADEH – Page 4

38.     When Ms. Malekzadeh met personally with Niebur, it was for the sole purpose of receiving tax advice and preparation of the returns.

39.     In the course of his work with defendants, Niebur committed multiple acts of professional negligence and misconduct that caused many of the problems with defendants' income tax returns that the complaint details.

40.     On defendants' 2011 income tax return, Niebur incorrectly reported a value of zero for the capital gain associated with defendants' sale of their Iranian real property. Specifically, Niebur reported that defendants had received $500,000 for a property with a $500,000 basis, resulting in zero gain.

41.     Defendants had accurately advised Niebur that they had in fact received gross proceeds totaling closer to $2,000,000 from the property sale. Niebur, however, considered the sale an open transaction until the point when all defendants' net proceeds made their way to the United States. Niebur intended to later amend defendants' 2011 return to report a higher amount of proceeds from the sale, if any was in fact received. Niebur wanted to wait to see if sanctions, transaction costs, or other obstructions to moving defendants' funds to the United States might reduce the amount of gain that defendants actually realized.

42.     What Niebur should have done instead was to report the highest estimated amount of real property sale proceeds on defendants' 2011 return, and then file an amended return reporting a lower amount if it turned out that defendants ultimately realized a smaller gain. Niebur made a serious error, to defendants' detriment, by getting this process backward.

43.     Niebur also committed professional negligence and misconduct, to defendants' detriment, by falsely relating to the IRS the matters discussed in paragraph 35 of the complaint.

44.     On information and belief, Niebur lied to the IRS about defendants about the

matters discussed in paragraph 35 of the complaint in an effort to reduce or eliminate his own potential liability for his professional negligence and misconduct.

### *IRS Audit*

45.     Farsi is defendants' first language and English is a second language for them.

46.     Defendants' English language comprehension and other English language abilities were worse during the time period covered by the complaint than they are now, years later.

47.     In the course of auditing defendants as described in paragraphs 40 through 42 of the complaint, IRS agents did not make adequate provisions to support defendants' English-language comprehension. This led to misunderstandings on the part of the IRS agents about defendants' actions, omissions, knowledge, and willfulness.

48.     On information and belief, in the course of auditing defendants as described in paragraphs 40 through 42 of the complaint, IRS agents misrepresented to defendants their right to the assistance of legal counsel during the audit.

## AFFIRMATIVE DEFENSES

49.     In support of each of their affirmative defenses, defendants incorporate and reallege their admissions, denials, and allegations above as though set forth therein.

### *Reasonable Cause Excuses Violations*

50.     Defendants allege for their first affirmative defense that, for the reasons detailed in paragraphs 27 through 48 of this answer, any FBAR violation on their part was excused by reasonable cause within the meaning of 31 U.S.C. §5321(a)(5)(B)(ii).

### *Lack of Willfulness Mitigates Penalties*

51.     Without waiving any defenses or denials — and only to the extent that the law

imposes any sort of burden upon defendants in this context — defendants allege for their second affirmative defense that any penalties imposed upon them should be reduced or mitigated by their complete or partial lack of willfulness in the transactions of which the government complains.

### *The Proposed Penalties Are Arbitrary and Capricious under the APA*

52.     Without waiving any defenses or denials, defendants allege for their third affirmative defense that, even if they committed a willful violation, which they deny, the penalties assessed by the government are arbitrary and capricious and must be set aside under the Administrative Procedures Act, 5 U.S.C. §§706(2)(A), (E).

### *BSA Regulations Make $100,000 the Maximum Penalty for Willful FBAR Violations*

53.     Without waiving any defenses or denials, defendants allege for their fourth affirmative defense that, even if they committed a willful violation, which they deny, the Bank Secrecy Act regulations set forth at 31 C.F.R. §§1010.810, 1010.820(g), and 1010.821 collectively work to fix the maximum civil penalty for such a violation at $100,000. These regulations effectively mitigate the applicable penalty even if defendants are otherwise liable.

### PRAYER FOR RELIEF

54.     For the foregoing reasons, defendants respectfully pray that plaintiff's complaint be denied and dismissed with prejudice, that defendants be entitled to recover their costs and disbursements, and that defendants be afforded any other relief the court deems just and appropriate.

## JURY TRIAL DEMAND

55.    Defendants hereby demand a trial by jury on all allegations so triable.


RESPECTFULLY SUBMITTED January 13, 2021.


/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Defendants
Ali Mahyari and Roza Malekzadeh

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing ANSWER AND AFFIRMATIVE DEFENSES OF
DEFENDANTS ALI MAHYARI AND ROZA MALEKZADEH on Alexander E. Stevko, Esq.,
attorney for plaintiff United States of America, via CM/ECF on January 13, 2021. I further
certify that Mr. Stevko is a registered CM/ECF user.


/s/ Bear Wilner-Nugent
Bear Wilner-Nugent, OSB #044549
Attorney for Defendants
Ali Mahyari and Roza Malekzadeh