DAVID A. HUBBERT
Deputy Assistant Attorney General

ALEXANDER E. STEVKO
TY HALASZ
Trial Attorneys, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
*Tel*. (202) 616-2380 (Stevko)
*Tel*. (202) 307-6484 (Halasz)
*Fax*. (202) 307-0054
Alexander.Stevko@usdoj.gov
Ty.Halasz@usdoj.gov
*Counsel for the United States*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Ali Mahyari; and Roza Malekzadeh,<br><br>Defendants. | Case No. 3:20-CV-1887-IM<br><br>UNITED STATES' REPLY TO MOTION FOR SUMMARY JUDGMENT |

Defendants' attempt to portray themselves as compliant taxpayers confused by a complex tax system and as the victims of careless professional help is not supported by the record in this case. That is why their Response (ECF No. 16) to the United States' Motion for Summary judgment (ECF No. 15) frequently makes claims either completely unsupported by anything in the record, in violation of the requirements in Rule 56(c)(1), or directly contradicted by the actual evidence. When the Court separates lawyerly arguments and speculation from evidence, the facts in the case become clear: Ali Mahyari and Roza Malekzadeh sold property in Iran for over $2 million and concealed most of it from the IRS by signing a tax return reporting only a

fraction of the proceeds; they actively used multiple foreign bank accounts in multiple countries to regularly move money from Iran to the United States with little detection; they signed returns multiple years that failed to report an interest in foreign bank accounts; they never asked any professionals about foreign bank reporting requirements despite working with many different people; and they repeatedly made false statements to the IRS about their accounts, only fully disclosing them when IRS exams closed in and it became beneficial. All of this shows that they were at least reckless, and therefore willful in not filing FBARs. Far from an excusable error on a complex tax calculation, the requirement at issue in this case is a simple one: Defendants just had to know about a foreign account and report it on one form — a rule as simple as filing a specific type of tax return, for which claimed ignorance cannot serve and has never served as a defense.

In the face of these undisputed facts and clear legal standards, the Response confuses matters by distorting what is in dispute and speculating with no factual support. It ignores the statutory bar on reasonable cause defenses and devotes significant space to what is essentially a reasonable cause defense, without any citations to authority. *See* Resp. at 14–18. And it flatly misstates the legal standard, mistakenly arguing the Court needs to probe into subjective intent and, in the process, misstates the United States' argument. *See* Resp. at 11–12.

This Reply will clarify the recklessness standard, state why Defendants were reckless (even if they had language difficulty) and can't claim reasonable cause, and it will end by clarifying what few facts are actually disputed and why they're immaterial.

**I.     Recklessness is an objective standard and is distinct from willful blindness.**

Defendants argue that the United States conflates recklessness and willful blindness in arguing that both are subject to objective legal standards. *See* Resp. at 11. They insist that

determining whether they were willfully blind "inevitably requires making subjective determinations about their credibility." Resp. at 12. Defendants are incorrect.

Courts apply an objective standard to determine if someone was reckless for purposes of determining willfulness for civil FBAR penalties. *See Bedrosian v. United States*, 912 F.3d 144, 153 (3d Cir. 2018); *United States v. Goldsmith*, 541 F. Supp. 3d 1058, 1083 (S.D. Cal. 2021).[1] Under such an inquiry, an "improper motive or bad purpose is not necessary to establish willfulness." *United States v. McBride*, 908 F. Supp. 2d 1186, 1204 (D. Utah 2012). Courts need not consider taxpayers' subjective intent or knowledge, which is why, as pointed out in the Motion, courts have often granted summary judgment in the willful FBAR context.

Defendants confuse the matter by saying the Court needs to consider their subjective intent to determine willful blindness. This is wrong for a few reasons. First, willful blindness is yet *another* way to show willfulness for civil FBAR penalties, but it is not the same as recklessness or how to show it; they are distinct concepts. *See*, *e.g.*, *McBride*, 908 F. Supp. 2d at 1210 (drawing a distinction and saying that the defendant was either reckless "or" willfully blind). Second, while "willful blindness" does require showing that a taxpayer is subjectively aware of facts that could give rise to a liability and then intentionally chooses not to learn anything further, *United States v. Williams*, 489 F. App'x 655, 658 (4th Cir. 2012), that is different from proving they subjectively intended to violate a law; after all, the whole point of willful blindness is to have an indirect way of proving general willfulness aside from directly proving the specific intent. Here, the subjective knowledge would be awareness of a foreign bank

---

[1] Defendants assert incorrectly that the United States cites no authority from within the Ninth Circuit. While not from the Ninth Circuit itself, *Goldsmith* is a decision by another District Court within this Circuit supporting the United States' arguments regarding the legal standard to apply.

account (and unreported income related to it), and the purposeful acts would include choosing not to ask a professional about it and concealing the account's existence from the IRS.

The Court does not need to probe into Defendants' subjective motivations or find that they knowingly violated the law. Recklessness is an objective standard, and the separate concept of willful blindness only requires showing already undisputed facts.

## II.     Defendants were reckless, particularly if they did not speak English well.

The United States explained in its Motion the many facts that show Defendants were reckless under the objective standard applied in civil FBAR cases. It adds this section to clarify that while the evidence shows Defendants were proficient enough in English to understand their many interactions relevant to this case, even if their English were as limiting as they argue in the Response, their failure to seek language assistance is itself evidence of recklessness. Thus, Defendants' alternative story of this case fails as a matter of law.

The standard for recklessness is conduct violating an objective standard of action entailing an unjustifiably high risk of harm that is known or so obvious it should be known. *Safeco*, 551 U.S. at 68. Another formulation is that someone ought to have known there is a risk of harm and is in a position to find out for certain but doesn't. *Bedrosian*, 912 F.3d at 153. If Defendants went to their accountant for years without a translator despite their claim that they do not understand English very well, and they knew they didn't understand everything but never asked for a translator or sought clarification, such behavior is reckless. Assuming Defendants' allegations to be true, there was objectively a high risk of harm due to misunderstanding, and they (not their accountant) could do something about it by asking for assistance. The same applies to their interactions with the IRS. They never requested a translator or indicated they didn't understand, even though they and not the IRS officers interviewing them were in a

position to know what they needed. This continued behavior over many years mostly implies that they did sufficiently speak English, but if not, then it is indicative of recklessness, which establishes willfulness as a matter of law.

In other legal contexts, courts place the burden on individuals to request language assistance. Even in circumstances with heightened concern for individual rights, such as when courts consider notice or waiver for due process, the "burden of diligence and further inquiry" is on the non-English speaker. *People of Territory of Guam v. Nuguid*, 959 F.2d 241 (9th Cir. 1992) (quoting *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989) (defendants must make language issues known, and allowing a defendant to remain silent and then assert a language issue after conviction "would be an open invitation to abuse"); *Toure v. United States*, 24 F.3d 444, 446 (2d Cir. 1994) (English notice of seizure and sale not improper as a matter of law when someone said they didn't speak English after the fact because the burden is on the individual to seek translation). If the Court accepts Defendants' characterization of their English comprehension notwithstanding the evidence to the contrary, the same rule should apply here. Defendants cannot engage with their tax professionals and the IRS in English for years, repeatedly lie or fail to seek legal advice, never ask for language assistance, and then, years later when facing legal consequences for their recklessness, claim their English was not good enough.

Rather than creating a factual dispute, Defendants' vague assertions about their English proficiency show how objectively reckless they were. They were also reckless and willful for the many other reasons mentioned in the Motion: concealing income from the IRS by signing a return reporting $500,000 despite knowingly receiving over twice that, *see e.g.*, *Kimble v. United States*, 141 Fed. Cl. 373, 389 (2018) (taxpayers charged with knowledge of contents of return); repeatedly lying to the IRS about their accounts until it was beneficial not to, *Norman v. United*

Reply to Motion for Summary Judgment    5
(Case No. 3:20-CV-1887-IM)

*States*, 942 F.3d 1111, 1116 (Fed. Cir. 2019) (finding willfulness in part based on many false statements made to the IRS during audits); and failing to actively seek any legal advice or do their own research on the easily ascertainable FBAR requirements.[2]

### III. Reasonable cause is not available and, even if it were, Defendants would be barred from claiming it as a matter of law.

The only explicit factual disputes Defendants allege concern what Ms. Malekzadeh did or did not tell Mr. Niebur. Generously reading the Response, they seem to say that if Mr. Niebur asked them if they had foreign accounts, (1) they accurately disclosed them, (2) neither he nor they asked anymore follow-ups, and (3) he prepared returns that did not report foreign accounts, which Defendants then signed without reviewing. Resp. at 8 (saying they only noticed errors when audited despite the reported proceeds being less than half of what they'd already actually received); **Exhibit F**, Ali Dep. 96:4–7. They insist that reasonable cause should still be a live issue, Resp. 20, which implies they think they have a reasonable cause defense based on the above facts.

Defendants are mistaken for several reasons. First, they ignore the clear statutory bar to reasonable cause defenses for willful FBAR penalties. 31 U.S.C. § 5321(a)(5)(C)(ii). Second, even if they weren't statutorily barred from invoking a reasonable cause defense, they would not be entitled to one under the undisputed facts. Though a reasonable cause defense is barred, the United States nonetheless addresses the merits, as a few courts have held that facts related to reasonable cause could also be probative of willfulness. *See Jones v. United States*, No. 19-CV-4950, 2020 WL 2803353 at *7 (C.D. Cal. May 11, 2020) (the reasoning of the Supreme Court

---

[2] The United States points out again that while Defendants generally operated in English, the IRS has a page with resources in Farsi. *See* Internal Revenue Service, اطلاعات مربوط به مالیات فدرال, https://perma.cc/3GBU-RK6Y (last updated Mar. 29, 2022). This page contains further contact information and resources Defendants could have used to seek assistance.

concerning reasonable cause is persuasive as to whether FBAR violations were willful); *United States v. Schwarzbaum*, No. 18-CV-81147, 2020 WL 1316232, at *9 (S.D. Fla. Mar. 20, 2020). Said another way, while Defendants might not be entitled to a specific reasonable cause "defense," if they could show facts that would entitle them to a defense in other contexts, those facts could suggest they were not "willful." But Defendants cannot show that.

The main case discussing reasonable cause for tax penalties is *United States v. Boyle*, 469 U.S. 241 (1985). In *Boyle*, the Supreme Court held that the taxpayer was not entitled to a reasonable cause defense to a late-filing penalty even though the taxpayer retained an attorney and paid the attorney to file the return. The Court held that a taxpayer has a "heavy burden" of establishing their error was due to reasonable cause, which typically involves showing the exercise of "ordinary business care and prudence". *Id.* at 245. In so holding, the Court distinguished between specific "advice" given from a lawyer to a client about an issue such as the amount of a tax liability (for which a reasonable cause defense is sometimes possible) and nondelegable duties, which include being able to look up if a return is required and when it's due (for which a reasonable cause defense is not possible). *Id.* at 251–52.

Further cases refined the standard by stating that taxpayers could try and claim reasonable cause (though still not guaranteed) if they received advice on an issue sufficiently complex that it could be "reasonably debatable." *Baccei v. United States*, 632 F.3d 1140, 1149 n.3 (9th Cir. 2011). In contrast, when a legal obligation is "reasonably ascertainable," a taxpayer cannot excuse noncompliance by claiming to have relied on a professional. *Id.* at 1148. Thus, even if the tax system is generally considered "labyrinthine," retaining and blindly relying on a tax professional is not "ordinary business care" when the issue does not require substantive tax advice on a debatable issue. *Knappe v. United States*, 713 F.3d 1164, 1172 (9th Cir. 2013) (no

reasonable cause when the taxpayer never contended that the professional ever affirmatively inaccurately advised him on a substantive tax liability). In addition, even where an issue may be appropriate for reliance on a professional, taxpayers can only claim reliance on that advice when they provide the professional complete and accurate information. *E.g., DJB Holding Corp. v. Comm'r*, 803 F.3d 1014, 1029 (9th Cir. 2015); *Cohen v. United States*, 999 F. Supp. 2d 650, 675 (S.D.N.Y. 2014).

Here, Defendants imply their failure to file FBARs was justified because Mr. Niebur never affirmatively told them to file. They are mistaken because they never specifically asked about or received any advice on FBARs. They claim that Mr. Niebur simply asked one question about foreign accounts and moved on, Resp. at 15–17, but they never claim he erroneously told them *not* to file FBARs, which are separate from their tax returns. *See Knappe*, 713 F.3d at 1172 (no reasonable cause where taxpayer never asked for and received specific legal advice). Further, Defendants concede that they provided Mr. Niebur, at most, incomplete information about their foreign accounts, depriving him of key information needed to provide them accurate advice. *See, DJB Holding*, 803 F.3d 1014. Moreover, even if they had provided accurate information and received erroneous advice, reliance on Mr. Niebur would be no excuse because the FBAR filing requirement is the kind of easily ascertainable rule that is not subject to debate —such potential advice would be "nonsubstantive." *Cf. Baccei*, 632 F.3d at 1149.

The requirements for filing an FBAR are having a foreign bank account or accounts with an aggregate balance over $10,000. These are easy to determine. Nothing about the FBAR requirements is more complex than the various types of estate or employment tax returns at issue in the cases cited above, where reasonable cause defenses were rejected. Ultimately, even if Defendants were able to legally raise a reasonable cause defense (which they aren't) and even if

they received actual legal advice not to file an FBAR (which they never did), Defendants could not rely on such advice as an excuse for a clear requirement like filing one form. *See Goldsmith*, 541 F. Supp. 3d at 1080 (reliance by a lay person on an accountant or attorney "cannot function as a substitute for compliance with an unambiguous statute").

For non-willful FBAR penalties, for which there is a possible reasonable cause defense, the facts of this case would still not allow for such a defense. *See e.g.*, *Jarnagin v. United States*, 134 Fed. Cl. 368, 378 (2017) (failure to ask a tax professional about foreign bank accounts deprived the taxpayers of a reasonable cause defense). In *Jarnagin*, the taxpayers relied on an accountant to fill out their tax return, but they otherwise did not seek any "legal advice" from the accountant, including about FBAR requirements despite having foreign bank accounts. Even though the *accountant knew* about the foreign bank accounts, the Court held that the taxpayers were not excused from filing returns that failed to report foreign accounts or file FBARs because they signed the returns under penalty of perjury and were charged with knowing the returns' contents. *Id.* at 378–79. The taxpayers failed to review the returns, which was not ordinary business care despite relying on an accountant who knew about their foreign accounts.

Even if Defendants could invoke reasonable cause, and even if the Court assumes for purposes of this Motion that Mr. Niebur knew about their accounts but prepared an erroneous return, Defendants were still reckless and did not exercise reasonable care. There is no material dispute that they failed to seek actual legal advice about filing FBARs and failed to review their returns in detail. They had a nondelegable duty to do both, or at least ask about them, and they cannot blame Mr. Niebur or anyone else for not doing so. Defendants therefore cannot seek a reasonable cause defense as a matter of law or use a similar argument to imply they were not reckless.

Reply to Motion for Summary Judgment         9
(Case No. 3:20-CV-1887-IM)

### IV. Defendants mischaracterize the evidence with unsupported arguments and otherwise concede the material facts supporting the United States

When the party moving for summary judgment meets its initial burden, "the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). A mere scintilla of probative evidence is insufficient. *Id.* at 252. And "arguments of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment." *Barcamerica Int'l USA Trust v. Tyfield Importers Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002).

Defendants raise a few possible factual disputes, but they either are immaterial because, even assuming their version of the facts is true, they were still objectively reckless, or their purported facts are unsupported by the record. The main factual dispute that Defendants assert is whether Mr. Niebur asked about foreign accounts and how Ms. Malekzadeh responded. Though the actual extent is unclear, they may also be asserting some vague dispute over Defendants' level of fluency in English. While the United States submits the claimed disputes are not legally relevant, it will clarify the actual record that is supported by evidence for the Court.

Mr. Niebur testified that (1) he asked if Defendants had any foreign accounts, (2) Ms. Malekzadeh said no, and (3) she did not ask any follow-up questions or request clarification. **Exhibit G**, Niebur Dep. 56:15–22, 57:9–19, 58:6–13.[3] Ms. Malekzadeh testified once that she

---

[3] Defendants mistakenly claim that Mr. Niebur was "unable to offer any independent confirmation that he asked the question beyond his simple assertion that he must have done so (continued...)

"did tell him there is money in the bank in Iran" (it is unclear if she claims she said this unprompted, and she never claims to disclose the Canadian account), and she stated another time that Mr. Niebur never actually mentioned foreign accounts. *Compare* **Exhibit H**, Roza Dep. 61:6, *with* Ex. 102 at 4–5 (Doc. 16-2). Similarly, Mr. Niebur, Lucas Klyzek, and Joshua Cook have all stated that they spoke English with Defendants and understood each other. *See* Niebur Dep. 65:1–12; Klyzek Decl. ¶ 17; Cook Decl. ¶¶ 7, 9–10, 16, 27. Defendants claim that they sometimes have difficulty understanding English. Resp. at 12–14.

These claims don't really conflict with evidence proffered by the United States. And even if some of Defendants' claims may invite "credibility determinations", Resp. at 19–20, there remain sufficient undisputed facts supporting summary judgment. In other words, regardless of who is right concerning the narrow question and answer between Mr. Niebur and Ms. Malekzadeh, that exchange would, at most, go to reasonable cause, which Defendants are not entitled to as a matter of law for the reasons set out above. In sum, the material facts needed to establish Defendants' recklessness are uncontroverted.

### A.   *Uncontroverted Evidence*

First, the United States submitted the declaration of now Revenue Agent Lucas Klyzek, who conducted Defendants' first interview with the IRS. R.A. Klyzek asked Defendants if they

---

because he always does for everyone else." Resp. at 15 (citing Niebur Dep. 25:17–25). While the United States is not trying to weigh evidence or evaluate credibility, it highlights this mischaracterization through omission because it resembles other mischaracterizations throughout the Response. As indicated in the cited portion above, the United States directly and separately asked, and Mr. Niebur directly and separately responded about this question as to each tax year at issue. Moreover, he also states that he *must* have asked the question about foreign bank accounts because his tax preparation software would not allow him to complete a return without answering each question and it included a question about foreign accounts. Niebur Dep. 29:1–14, 34:3–9.

had any foreign bank accounts, or any other interest in a foreign trust or account. Klyzek Decl. ¶ 14(ff)–(gg) (Doc. 15-5). Defendants answered no to both questions. Klyzek Decl. ¶ 14(ff)–(gg). The United States also submitted the declaration of Revenue Agent Joshua Cook, who continued the tax examination and then conducted the FBAR examination. R.A. Cook asked Defendants in December 2014 if they had disclosed all their bank accounts, even repeating the question to emphasize that it encompassed any foreign bank accounts. Cook Decl. ¶¶ 8, 12 (Doc. 15-6). "They responded that they disclosed all their bank accounts" even though the "only foreign bank account they disclosed during this interview was the one in Iran." Cook Decl. ¶ 12.[4] Indeed, Mr. Mahyari concealed the Canadian accounts until a subsequent interview in August 2015. Cook Decl. ¶¶ 14, 17–19. Defendants do not dispute this. The interview they cite as evidence of their supposed cooperation is from much later in 2015; they do not address the multiple previous interviews in which they misled the IRS.

The United States also submitted Defendants' bank statements, which show that they moved at least $1,350,295.09 into the United States during 2011 alone. *See* Ex. 13 (Doc. 15-19); Ex. 14 (Doc. 15-20). And the United States proffered Defendants' 2011 tax return, signed by both Defendants, where they claimed $500,000 in proceeds from the Lavasan property sale. Ex. 7 at 3 (Doc. 15-13). Because there is no reasonable cause defense and Defendants provided this figure, Defendants cannot outsource the responsibility for this error on Mr. Niebur, so it is uncontroverted that Defendants underreported the proceeds by at least $850,295.09.

Finally, the United States proffered the OFAC license, which informed Defendants that it did "not excuse compliance with any law or regulation administered by . . . another agency

---

[4] This fact is corroborated in R.A. Cook's interview notes proffered by Defendants themselves. *See* Ex. 101 at 36 (Doc. 16-1).

(including reporting requirements) applicable to the transactions" covered by the license. Ex. 16 ¶ 5 (Doc. 15-22). The United States also proffered Defendants' testimony that they never read the license, **Exhibit H**, Ali Dep. 84:18–19, 85:9; Roza Dep. 61:16–17, and they never asked anyone about possible reporting or tax consequences of the OFAC license and foreign accounts, nor did any research themselves. Ali Dep. 86:16–19, 96:8–11, 108:8–11. Defendants do not address these facts at all, so they, too, are uncontroverted and establish that Defendants ignored warning signs to investigate the FBAR reporting requirement.

  B.  *Mischaracterized and Unsupported "Facts"*

Defendants also make several assertions that are belied by the cited evidence itself or evidence elsewhere in the record. Many of these examples don't legally matter – for example regardless of the source of the $500,000, Defendants signed the return reporting it, *see Jarnagin*, 134 Fed. Cl. at 378–79 (2017) – but the United States notes them to demonstrate the Response's loose citations (or lack thereof) to "particular parts of the materials in the record," as is required by Rule 56(c)(1):

| Defendants' Claim | What Cited Record Says | What is Supported |
|---|---|---|
| "Defendants unequivocally stated that Mr. Niebur was the actual architect of this plan." Resp. at 19. | • Mr. Niebur "made a mistake putting $500,000 down." Roza Dep. 73:18–22.<br>• It was Defendants who gave Niebur $500,000 amount. Ali Dep. 98:19–99:14. | Mr. Niebur might have made a "mistake" ultimately, but Defendants provided the $500,000 amount. |
| Struggles with English prevented them from getting work. Resp. at 2–3. | • The cited portion lists businesses owned by Defendants. Ali Dep. 19:15–20:19<br>• Mr. Mahyari found the DOD job because he was looking for work in Farsi. Ali Dep. 21:18–23 | Defendants owned multiple businesses. Defendants never testified they own their businesses because they couldn't find other work. There is no supplemental declaration, and this is just argument from counsel. |

Reply to Motion for Summary Judgment  13
(Case No. 3:20-CV-1887-IM)

| | | |
|---|---|---|
| Defendants "provided whatever information their preparers requested". Resp at 5. | • Defendants trusted professionals to understand and handle all tax matters. Ali Dep. 26:22–27:10.<br>• Defendants trusted Mr. Niebur. Ali Dep. 27:18–28:12.<br>• Ali told Roza to follow Ms. Yazdanyar's advice. Ali Dep. 60:17–61:2.<br>• Ali trusted Ms. Yazdanyar so did not ask for translation. Ali Dep. 82:21–83:1; 84:14–17.<br>• Roza trusted Mr. Niebur and gave him documents she saved through the years. Roza Dep. 49:2–51:15. | Defendants trusted Mr. Niebur and Ms. Yazdanyar and gave them some documents. But there is no evidence they provided whatever they were asked, and no evidence refuting they provided the $500,000 amount. |
| Defendants were "open and forthcoming" with the IRS. Resp. at 8–9. And their good-faith effort to comply is "supported by the records of their 2015 audit interviews." Resp. at 18. | • In August 2014, Klyzek asked Defendants if they had any foreign accounts and they said no. Klyzek Decl. ¶ 14(ff)–(gg).<br>• Cook asked repeatedly if Defendants disclosed all their foreign accounts and they said yes while only disclosing 1 of their 3 accounts. Cook Decl. ¶¶ 8, 12.<br>• Defendants disclosed all accounts in August 2015. Cook Deck. ¶¶ 14, 17–19. | Defendants disclosed all three bank accounts only in the second year of their audit after lying in multiple interviews, and only when it became beneficial to them in the audit, as explained in the United States' Motion. |
| Defendants could not readily return profits to the United States, so they retained Ms. Yazdanyar. Resp. at 6. | • Defendants moved *at least $893,330* to the United States *before* retaining Ms. Yazdanyar and an additional $440,665.09 *before* receiving OFAC license on 10/24/2011. Ex. 14 at 3–9. | Defendants were readily able to move money into the United States, and they moved much more money in 2011 than they reported. |

C.    **The Court cannot reasonably infer that Defendants didn't speak English.**

The Court need only draw reasonable inferences in Defendants' favor. *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1065 n.10 (9th Cir. 2002). When "a party opposing summary judgment fails to produce substantial factual evidence to combat summary judgment and there is overwhelming evidence favoring the moving party, it may be unreasonable to draw an inference contrary to the movant's interpretation of the facts, and therefore a summary

judgment would be appropriate even when", unlike the objective standard at issue in this case, "state of mind is at issue." *United States v. 1980 Red Ferrari*, 827 F.2d 477, 479 (9th Cir. 1987).

In opposing the United States' Motion, Defendants seem to request an inference that they did not sufficiently speak English — presumably to imply they couldn't be willful. As stated, the Court need not determine on summary judgment if Defendants definitively spoke English, because if they did not, their undisputed failure to ever request a translator at any of the meetings at issue in this case over many years is reckless. The United States will nonetheless still show how Defendants' inference is not reasonable.

Farsi, not English, is Defendants' native language, but that alone does not support the ultimate inference that they could not communicate with their accountant or the IRS or be held to the same standards as "many adult Americans who grew up in this country." Resp. at 13. To be sure, the record establishes that Defendants' English was weaker than their Farsi. Ali Dep. 16:16–18, 21:18–23; Roza Dep. 20:1–3. However, the overwhelming evidence of Defendants' English language abilities establishes that they have enough of a command to get things done such that the inference they seek would be unreasonable. *See Red Ferrari*, 827 F.2d at 479.

The record is rife with evidence that, while more difficult for Defendants than Farsi, they navigate speaking English as well (or better than) many Americans: Ms. Malekzadeh can speak English, read English, and write in English. Roza Dep. 10:23–11:3. Ms. Malekzadeh has spoken English in every job she has had in the United States other than the Defendants' remodeling businesses. Roza Dep. 17:15–21. Even if she was eventually fired from some, she was hired four times to English-speaking jobs. Roza Dep. 15:22–16:4. She has been a licensed insurance agent and mortgage broker, both of which involved open-book tests administered in English, Roza Dep. 29:11–13, 30:19–23, 31:3–5, 32:8–10, and she did not use any translation or interpretation

services to complete any of these tests. Roza Dep. 26:6–7, 26:13–14, 30:24–31:2, 32:11–15. Mr. Mahyari completed his Ph.D. in English in Australia and submitted his thesis in English. Ali Dep. 16:9–21. Mr. Mahyari himself testified that he is "not claiming that I don't understand any English. I do understand some English." Ali Dep. 27:16–17.

For their business, Defendants' contracts with contractors are in English. Ali Dep. 25:2–5. When flipping houses, the paperwork is all in English. Ali Dep. 26:16–18. In communicating with their chosen title company, Mr. Mahyari speaks English. Ali Dep. 27:13–16. Defendants generally do not hire translators for use in their business, Ali Dep. 25:6–8, 26:19–22, 33:15–19.

When engaging professionals, Defendants also used English. Ms. Malekzadeh spoke English with Mr. Niebur and did not request an interpreter. Roza Dep. 49:22–25, 50:8–10. They argue without evidence that it is harder for them to understand jargon, but they never testified that Ms. Malekzadeh didn't understand Mr. Niebur's questions. Despite retaining Ms. Yazdanyar because she speaks Farsi, Ali Dep. 78:14–21, Mr. Mahyari emailed with her in English, Ali Dep. 81:22 – 82:3, Ex. 17 at 5–7 (Doc. 15-23); **Exhibit I**, Yazdanyar Emails. Defendants did not have the OFAC license translated. Ali Dep. 85:9–10. Mr. Mahyari sent a letter to OFAC asking to renew the license in English. Ali Dep. 92:18 – 21; **Exhibit J**, OFAC Letter.

Lastly, the IRS declarations remain uncontroverted. R.A. Klyzek stated that his perception was that Defendants understood his questions and he understood their responses. Klyzek Decl. ¶ 17. "They responded substantively to some questions in a manner that showed they understood the question in English and articulated a response in English". Klyzek Decl. ¶ 17. R.A. Cook's first contact with Ms. Malekzadeh was a phone call in November 2014, in which they had a "long conversation in English." Cook Decl. ¶ 7. In his first interview with Defendants, Cook stated that they never said they did not understand a question, and they never

requested a translator. Cook Decl. ¶ 9. "There were multiple times they responded in depth to questions that indicated they understood the question and could answer it in English." Cook Decl. ¶ 10. R.A. Cook's impression of Defendants' subsequent interviews was that they understood the questions. Cook Decl. ¶¶ 16, 27. Indeed, Mr. Mahyari testified that when Cook asked whether Defendants had any foreign accounts, he understood. Ali Dep. 111:23–25.[5]

Read charitably, the Response seems to imply that Defendants' English was too weak to know what they were doing such that they can't meet the legal requirement of willfulness. But Defendants never actually testify or otherwise proffer evidence that they did not understand their communications with Yazdanyar, Niebur, Klyzek, and Cook, so the above evidence is uncontroverted. Therefore, even on summary judgment, the Court cannot infer that they did not understand or could not adequately communicate. The foregoing facts show that Defendants are able to get by as well as most taxpayers. "Somehow we get along." Ali Dep. 25:17.

## CONCLUSION

The specific issues here are quite simple: Defendants sold property in Lavasan, Iran for $2 million, and moved over $1.3 million to the United States in 2011. In 2011 to 2013, Defendants had two Canadian bank accounts and an Iranian bank account, and they were aware of each and actively used them. Despite receiving $1.3 million in their American bank accounts in 2011 alone, and despite having hundreds of thousands of dollars combined in their Iranian and Canadian bank accounts, Defendants signed tax returns that reported only $500,000 in total proceeds from the sale (with no actual gain) and that did not report their foreign accounts.

---

[5] Defendants attempt to show cooperation by citing IRS interview notes from their untimely 2015 discussion of foreign accounts. The IRS interviews were all in English so it would be hypocritical for Defendants to selectively cite to one undisputed 2015 transcript while also claiming some generalized difficulty with English sufficient to undercut their willfulness.

Defendants never once asked anyone they worked with for a translator or asked anyone specific advice about the tax treatment of foreign accounts. They did not read or review documents they received, and they never attempted to learn for themselves, despite knowing about moving well over a million dollars to the United States in 2011 alone. They also never deny failing to disclose all of their accounts multiple times to the IRS, only fully disclosing them in 2015, over a year into an audit and when there was material benefit to doing so. These undisputed facts establish that Defendants were reckless.

The one alleged dispute Defendants highlight regarding what they said to their accountant is not material because they are statutorily barred from asserting a reasonable cause defense and, even if they could assert one, they did not exercise ordinary care regarding their tax returns and FBARs and could not outsource the readily ascertainable FBAR filing duty. Simply put, Defendants' failure to properly report their foreign accounts is attributable to their reckless conduct, which persisted over multiple years. Under the clear legal standards applied to civil FBAR penalties, Defendants were willful and are subject to the heightened penalty of 31 U.S.C. § 5321(a). The Court should grant the Motion, find Defendants were willful, and schedule briefing on the IRS's calculations and the amount of the penalties.

Dated: June 10, 2022

Respectfully submitted,

DAVID A. HUBBERT
Deputy Assistant Attorney General

/s/ *Alexander Stevko*
ALEXANDER E. STEVKO
TY HALASZ
Trial Attorneys, Tax Division
U.S. Department of Justice
*Counsel for the United States*

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 10, 2022, I filed the foregoing Reply and Exhibits F-J with the Clerk of the Court using the CM/ECF system, which will provide electronic notice to counsel for all parties that have appeared in this action.

                 */s/ Alexander Stevko*
                 ALEXANDER STEVKO
                 TY HALASZ
                 Trial Attorneys, Tax Division
                 U.S. Department of Justice