IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **ALI MAHYARI** and <br> **ROZA MALEKZADEH**, <br><br> Defendants. | Case No. 3:20-cv-01887-IM <br><br> **OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND** |

Matthew Uhalde and Alexander Stevko, U.S. Department of Justice, Tax Division, P.O. Box 683, Ben Franklin Station, Washington, DC 20044. Attorneys for the Government.

Bear Wilner-Nugent, Counselor & Attorney at Law LLC, 620 SW 5th Ave, Suite 1008, Portland, OR 97204. Attorney for Defendants.

**IMMERGUT, District Judge.**

Before this Court is the United States of America's ("the Government") Motion for Entry of Judgment After Remand ("Mot."), ECF 62. On November 2, 2020, the Government filed this action seeking civil penalties against Defendants Ali Mahyari and Roza Malekzadeh for failing to report an interest in a foreign bank account for tax years 2011, 2012, and 2013 under 31 U.S.C. § 5321(a)(5). Complaint ("Compl."), ECF 1 ¶ 2. At summary judgment, this Court held

PAGE 1 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

that Defendants willfully failed to file Reports of Foreign Bank and Financial Accounts ("FBAR") for their Canadian bank accounts for 2011, 2012, and 2013, and for their Iranian bank accounts for 2012 and 2013, but also held that genuine issues of material fact existed regarding whether Defendants willfully failed to file an FBAR for their Iranian bank accounts in 2011. Motion for Partial Summary Judgment Opinion, ECF 20 at 17–21. At trial, a jury found Defendants did not willfully fail to file an FBAR for their Iranian bank accounts for 2011. ECF 49. Taking into account the jury's determination, the Government recalculated the civil penalty for willfully failing to file FBARs for 2011, 2012, and 2013, and now moves this Court to enter judgment for $198,683, plus statutory accruals, against each Defendant. Mot., ECF 62 at 2. For the following reasons, this Court GRANTS the Government's Motion for Entry of Judgment After Remand, ECF 62.

## BACKGROUND

The facts below come primarily from the Parties' Joint Proposed Pretrial Order, ECF 27. Defendants Ali Mahyari and Roza Malekzadeh are a married couple who were born and raised in Iran. *Id.* at 2. Defendants are native Persian speakers, but both are conversant enough in English to live, work, and get by in the United States. *Id.* at 3. In the mid-1980s Defendants bought a residence in Lavasan, Tehran. *Id.* at 2. Defendants lived in this home until they moved to the United States in the early 2000s. *Id.* Ms. Malekzadeh became a U.S. citizen in 2006, and Mr. Mahyari became a U.S. citizen sometime between 2006 and 2010. *Id.*

After living in the United States for several years, Defendants sold their Tehran home in early 2011. *Id.* at 3. To access proceeds from the sale of their home, from 2011–2013, Defendants used bank accounts in Iran and Canada to move these funds to the United States. *See id.* at 3–5. Defendants used wire transfers to move a portion of the sales proceeds from their

Iranian bank accounts to their U.S. accounts. *Id.* at 3–4. Defendants also moved sales proceeds from Iran to their Canadian bank accounts, then purchased precious metals that were shipped to Defendants in Oregon. *Id.* at 3. These foreign accounts were reportable to the U.S. Treasury; yet Defendants did not timely file FBARs for tax years 2011–2013. *Id.* at 7.

On November 2, 2020, the Government filed a Complaint, alleging that Defendants possessed bank accounts in Canada and Iran from 2011 until 2013 and willfully failed to file FBARs to the Treasury for those years as required by 31 C.F.R. § 1010.350(a). Compl., ECF 1 ¶¶ 10, 44–50, 57–63. On April 22, 2022, the Government moved for partial summary judgment on whether Defendants' failure to file FBARs for their foreign bank accounts was willful. Motion for Partial Summary Judgment, ECF 15. This Court held that Defendants willfully failed to file FBARs for their Canadian bank accounts in 2011, 2012, and 2013, and for their Iranian bank accounts in 2012 and 2013, but also held that genuine issues of material fact existed regarding whether Defendants willfully failed to file an FBAR for their Iranian bank accounts in 2011. Motion for Partial Summary Judgment Opinion, ECF 20 at 17–21. The sole question left for trial was whether Defendants' failure to file an FBAR for their Iranian accounts in 2011 was willful. *See* Joint Proposed Pretrial Order, ECF 27 at 2. At trial a jury found Defendants did not willfully fail to file an FBAR for their Iranian bank accounts in 2011. ECF 49.

Following trial, this Court remanded the case to the Internal Revenue Service ("IRS") to incorporate the jury's finding and recalculate the FBAR penalty. ECF 55. The IRS then calculated Defendants' penalty for the bank accounts and years they willfully failed to file FBARs. ECF 58. The IRS determined the civil penalty to be $198,683 for each Defendant, plus statutory accruals. Mot., ECF 62 at 2. The Government now moves this Court to enter judgment against Defendants in this amount. *Id.*

PAGE 3 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

**LEGAL STANDARDS**

Any U.S. citizen who "has financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" shall file an FBAR with the Treasury Department. 31 C.F.R. § 1010.350(a). An FBAR must be filed "with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." *Id.* § 1010.306(c). The Secretary of the Treasury may impose a civil penalty on persons who do not meet the FBAR reporting requirements. *See* 31 U.S.C. § 5321. If the failure to file an FBAR is "willful," the Secretary may impose a penalty up to the greater of either $100,000 or 50 percent of the balance of the account at the time of the violation. *Id.* § 5321(a)(5).

The procedures for determining the penalty for willful FBAR violations are defined by in the Internal Revenue Manual ("IRM") § 4.26.16.5.5. Because the FBAR statute gives the IRS discretion to impose any penalty below the statutory maximum, 31 U.S.C. § 5321(a)(5), a court will set aside the penalty assessment only if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the Administrative Procedure Act. 5 U.S.C. § 706(2)(A); *Kimble v. United States*, 991 F.3d 1238, 1242–43 (Fed. Cir. 2021); *United States v. Rum*, 995 F.3d 882, 888 (11th Cir. 2021); *United States v. Collins*, 36 F.4th 487, 493–94 (3d Cir. 2022). Under this standard, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Gill v. U.S. Dep't of Just.*, 913 F.3d 1179, 1187 (9th Cir. 2019) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted)).

"An agency action is arbitrary and capricious if the agency has: relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the

PAGE 4 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ctr. for Cmty. Action & Env't Just. v. Fed. Aviation Admin.*, 18 F.4th 592, 598 (9th Cir. 2021) (citation omitted). Arbitrary and capricious review is narrow and "highly deferential; the agency's decision is entitled to a presumption of regularity, and [the court] may not substitute [its] judgment for that of the agency." *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014) (citation omitted).

When, as here, "Congress has authorized the agency to determine and impose sanctions, the agency's sanction determinations are 'peculiarly a matter for administrative competence.'" *Regency Air, LLC v. Dickson,* 3 F.4th 1157, 1161 (9th Cir. 2021) (quoting *Butz v. Glover Livestock Comm'n Co.*, 411 U.S. 182, 185 (1973)).

## DISCUSSION

Defendants argue that the IRS's calculation of FBAR penalties is arbitrary and capricious for two reasons: (1) the IRS should have applied mitigation guidelines to the FBAR penalty calculation and (2) the IRS used an inaccurate exchange rate to convert Defendants' Iranian rials to U.S. dollars. Defendants' Response in Opposition ("Defs.' Resp."), ECF 63 at 2, 7. However, for the following reasons, the IRS's FBAR penalty calculation is not arbitrary and capricious.

**A. The IRS's Refusal to Apply FBAR Penalty Mitigation Is Not Arbitrary and Capricious**

A person is entitled to a more favorable FBAR penalty calculation if he or she qualifies for mitigation under IRM § 4.26.16.5.5.3, Ex. 4.26.16-2. To qualify for mitigation, the person must satisfy the following criteria: (1) "The filer has no history of criminal tax or [Bank Secrecy Act] convictions for the preceding 10 years and has no history of prior FBAR penalty assessments"; (2) "No money passing through any of the foreign accounts associated with the

PAGE 5 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

filer was from an illegal source or used to further a criminal purpose"; (3) "The filer cooperated during the examination"; and (4) the "IRS did not determine a civil fraud penalty against the person for an underpayment for the year in question due to the failure to report income related to any amount in a foreign account." *Id.* The Parties contest only the third criterion—whether Defendants cooperated during the examination. *See* Mot., ECF 62 at 2–3; Defs.' Resp., ECF 63 at 2–7.

The IRM lists several non-exhaustive examples of cooperation, including the "IRS did not have to resort to a summons to obtain non-privileged information; the filer responded to reasonable requests for documents, meetings, and interviews; and the filer back-filed correct reports." IRM § 4.26.16.5.5.3, Ex. 4.26.16-2. According to the IRS, Defendants failed to cooperate during the examination in three independent ways: (1) Defendants failed to disclose all their foreign bank accounts to the IRS on multiple occasions; (2) Defendants failed to backfile FBARs for one bank account for 2012 and 2013; and (3) Defendants did not provide bank statements for all their foreign accounts. Mahyari Supplement to Form 886-A ("Mahyari Supplement"), ECF 62-2, Ex. 1 at 1; Malekzadeh Supplement to Form 886-A ("Malekzadeh Supplement"), ECF 62-3, Ex. 2 at 1. Because Defendants did not cooperate during the examination, the IRS determined that Defendants were not entitled to penalty mitigation. Mahyari Supplement, ECF 62-2, Ex. 1 at 2; Malekzadeh Supplement, ECF 62-3, Ex. 2 at 1.[1]

Defendants challenge this conclusion, arguing that evidence in the record shows they cooperated with the IRS. Defs.' Resp., ECF 63 at 2–7. However, because the evidence belies

---

[1] The IRS's explanation for why each Defendants did not qualify for mitigation is identical. *See* Mahyari Supplement, ECF 62-2, Ex. 1 at 1–2; Malekzadeh Supplement, ECF 62-3, Ex. 2 at 1–2; *see also* Defs.' Resp., ECF 63 at 2 n.1. Thus, this Court examines Defendants' mitigation arguments jointly.

PAGE 6 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

Defendants' claims of full cooperation, the IRS's refusal to apply mitigation guidelines is not arbitrary and capricious.

### 1. Defendants Did Not Disclose their Foreign Bank Accounts to IRS Examiners During Multiple Meetings

First, Defendants argue that they were forthcoming about their foreign bank accounts. Defs.' Resp., ECF 63 at 4. However, Defendants failed to disclose their foreign accounts to IRS examiners during multiple meetings in 2014. On August 5, 2014, Ms. Malekzadeh told IRS Examiner Lucas Klyzek that Defendants did not possess any foreign bank accounts. ECF 63-1, Ex. 101 at 29, 32. During a later December 8, 2014 interview, Defendants told IRS Examiner Joshua Cook that they had the equivalent of around $400,000 in an Iranian bank account but that they possessed no other foreign assets or accounts. *Id.* at 34–36. Defendants did not mention having any Canadian bank accounts.

It was only in 2015 that Defendants began to tell the truth. In July and August 2015, Defendant Mahyari met with Mr. Cook three times. During these meetings, Mr. Mahyari discussed the process he undertook to move currency from Iran to the United States through a Canadian bank account after Defendants received green cards in 2001. ECF 63-1, Ex. 101 at 1, 3. As of these 2015 meetings, Mr. Mahyari told Mr. Cook that Defendants had the equivalent of around $350,000–$400,000 in an Iranian bank account. *Id.* at 4. Defendant Malekzadeh also met with Mr. Cook on September 1, 2015. During this meeting, Ms. Malekzadeh similarly explained how Defendants moved money from Iran through a Canadian bank account into the United States. ECF 63-2, Ex. 102 at 2–4.

Given Defendants' failure in 2014 to disclose their foreign bank accounts and their contradictory statements in 2015, the IRS had a reasoned basis to conclude that Defendants did not cooperate during the examination when they failed to disclose all of their accounts to

PAGE 7 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

examiners. *See California v. Azar*, 950 F.3d 1067, 1097 (9th Cir. 2020) (en banc) (stating that courts "must confine [themselves] to ensuring that the agency remained within the bounds of reasoned decisionmaking." (citation and original brackets omitted)).

### 2. Defendants Did Not Back-File all of their FBAR Reports

Second, Defendants argue that they cooperated with the IRS by back filing all of their FBAR reports. Defs.' Resp., ECF 63 at 6–7. According to Defendants, they provided evidence showing submission of their delinquent FBAR reports during a November 2016 meeting with the IRS. Defs.' Resp., ECF 63 at 6; ECF 63-4, Ex. 104. Yet these reports do not show FBARs for Defendants' Canadian Bank Accounts for 2012 or 2013. *See* ECF 63-4, Ex. 104; Mahyari Supplement, ECF 62-2, Ex. 1 at 2–4; Malekzadeh Supplement, ECF 62-3, Ex. 2 at 2–4. Therefore Defendants have not provided evidence that they back-filed FBARs for each account for every year. Thus, the IRS had a reasoned basis to conclude that Defendants did not back-file all of their delinquent FBAR reports.

### 3. Defendants Did Not Provide Statements for each of their Foreign Accounts

Third, Defendants do not dispute that they failed to provide account statements for their Iranian bank accounts, but argue it is "inequitable" to consider this as noncooperation. Defs.' Resp., ECF 63 at 5–6. According to Defendants, their Iranian bank does not send statements to account holders. *Id.* at 5. Instead, account information can be obtained only if the account owner is physically present at the bank. *Id.* Ms. Malekzadeh requested account statements from Defendants' Iranian bank via email in 2017, but did not receive a response. Kimberly Pray Letter, ECF 63-3, Ex. 103 at 3.

Nonetheless, it was reasonable for the IRS to conclude that Defendants failing to provide bank statements for their Iranian accounts did not qualify as cooperating during the examination.

As noted above, one of the examples of cooperation referenced by the IRM is responding to reasonable requests for documents. IRM § 4.26.16.5.5.3, Ex. 4.26.16-2(c). Yet the IRS did not receive statements concerning Defendants' Iranian bank accounts, and as a result, the IRS had to reconstruct the balance for these accounts to calculate FBAR penalties. Mahyari Supplement, ECF 62-2, Ex. 1 at 1, 9; Malekzadeh Supplement, ECF 62-3, Ex. 2 at 1, 9.

Therefore, the IRS had a rational, reasoned basis to conclude that Defendants did not cooperate with the IRS's request for bank statements. *See Friends of Animals v. Haaland*, 997 F.3d 1010, 1015 (9th Cir. 2021) ("Under the arbitrary and capricious standard, the scope of review is deferential and narrow, and the court is not to substitute its judgment for the agency's judgment." (citation omitted)).[2]

\* \* \*

As detailed above, the IRS has articulated three rational bases for finding that Defendants did not cooperate during the IRS examination. Thus, this Court holds that the IRS's refusal to apply mitigation is not arbitrary and capricious.

---

[2] Even if it were unreasonable for the IRS to require Defendants make further efforts to obtain account statements from their Iranian bank, the IRS has stated two other independent reasons to justify finding that Defendants did not comply with the IRM's Mitigation Criteria. Therefore, any assumed error would be harmless. *See Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 659 (2007) (stating courts need only review agency actions for "prejudicial error" (citing 5 U.S.C. § 706)); *see also PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule").

PAGE 9 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

B. **The IRS's Conversion of Defendants' Iranian Rials into U.S. Dollars Using International Monetary Fund ("IMF") Exchange Rates Is Not Arbitrary and Capricious**

Defendants also argue that the IRS's use of the IMF exchange rate between Iranian rials and U.S. dollars is arbitrary and capricious. Defs.' Resp., ECF 63 at 7–12.[3] However, because the IRS made a reasoned determination to use the IMF exchange rate, the IRS's decision is not arbitrary and capricious.

The IRM details a step-by-step process to calculate the penalty for a willful FBAR violation. The first step requires the IRS to determine the highest balance during the year of each foreign account in local currency. IRM § 4.26.16.2.2.2(1)(a). Then, the IRS must convert this highest account balance into U.S. dollars. IRM § 4.26.16.2.2.2(1)(b). Generally, the IRM instructs the IRS to translate local currency in U.S. dollars using the official Treasury Reporting Rates of Exchange. *Id.*

In this case, the Parties agree that the Treasury Reporting Rates were not appropriate for the purposes of currency conversion, but disagree as to which exchange rate the IRS should have used. The IRM gives the IRS discretion to determine the amount of the penalty "based on the facts and circumstances of the case." IRM §§ 4.26.16.5.2.1(2), 4.26.16.5.5.3(4)(c). The IRS here used the IMF exchange rate, rather than the Treasury Reporting Rates, to calculate Defendants' Iranian accounts in 2012 and 2013. The IRS offered three justifications as to why it used IMF exchange rates: (1) the IMF rate was more consistent with the actual exchange rate obtained by Defendants; (2) the IMF rates calculated a lower FBAR penalty than the corresponding Treasury rates; and (3) the Treasury exchange rates between the Iranian rial and U.S. dollar were

---

[3] Defendants do not contest the IRS's conversion of foreign accounts denominated in Canadian dollars into U.S. dollars. *See* Defs.' Resp., ECF 62 at 7–12.

PAGE 10 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

unchanged from 2011 through 2013. Mahyari Supplement, ECF 62-2, Ex. 1 at 4; Malekzadeh Supplement, ECF 62-3, Ex. 2 at 4.

Despite this explanation by the IRS, Defendants counter that the IRS's use of IMF exchange rates is arbitrary and capricious because Iran's unique economic environment makes the IMF exchange rate inaccurate relative to the actual exchange rate available to members of the public. Defs.' Resp., ECF 63 at 7–12. Thus, Defendants argue that the IRS should have instead used the "black market" exchange rate published by Bombast.com to convert their rials into dollars. Defs.' Resp, ECF 63 at 7–11.[4]

The standard of review here resolves this issue in the IRS's favor. Although Defendants propose an alternative exchange rate, this Court may not ask whether the IRS's decision "is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016). "Rather, the agency has discretion to rely on its own expertise 'even if, as an original matter, a court might find contrary views more persuasive.'" *Azar*, 950 F.3d at 1096 n.28 (citation omitted). Because the IRS has articulated a rational basis for using the IMF exchange rate, its decision is not arbitrary and capricious. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009); *see also United States v. Hughes*, Case No. 18-cv-05931-JCS, 2023 WL 2393780, at *10 (N.D. Cal. Mar. 6, 2023) ("To the extent [the IRS] may have deviated from the IRM, it did so in ways that were either beneficial to [the defendant] or had no effect on the value of penalties. The Court is satisfied that the penalties assessed by the IRS after remand are not arbitrary or capricious.").

---

[4] Defendants cite a website and several scholarly articles to support its argument. *See* Defs.' Resp, ECF 63 at 7–11. In any event, these extra-record materials fail to persuade this Court given the IRS's reasonable justification for using the IMF exchange rate.

PAGE 11 – OPINION AND ORDER GRANTING UNITED STATES' MOTION FOR ENTRY OF JUDGMENT AFTER REMAND

## CONCLUSION

This Court GRANTS the Government's Motion for Entry of Judgment After Remand, ECF 62. The Government is ORDERED to file a proposed form of judgment within seven days of this opinion.

**IT IS SO ORDERED.**

DATED this 1st day of February, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge